United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HENRY WILDS, | ) | No. C 08-03348 CW (PR) |
| | ) | |
| Plaintiff, | ) | ORDER (1) DENYING |
| | ) | PLAINTIFF'S REQUEST TO |
| v. | ) | APPOINT EXPERT; (2) |
| | ) | GRANTING DEFENDANTS' MOTION |
| DONALD GINES, et al., | ) | FOR SUMMARY JUDGMENT |
| | ) | |
| Defendants. | ) | (Docket nos. 15, 29) |
| _____ | ) | |

INTRODUCTION

Plaintiff Henry Wilds, a state prisoner incarcerated at California Rehabilitation Center, brought this <u>pro se</u> civil rights action under 42 U.S.C. § 1983.  He alleges that, from 1998 to 2008, prison officials at the Correctional Training Facility (CTF) were deliberately indifferent to his serious medical needs, specifically his chronic low back pain and degenerative disc disease.  Plaintiff also alleges state law claims.  Plaintiff seeks monetary damages.

On January 2, 2010, the Court found that Plaintiff's allegations stated cognizable claims against CTF Defendants physicians Gines, Dayalan, Friederichs and Grewal as well as CTF Pharmacist-In-Charge Chris Hilleary and CTF Chief Medical Officer Joseph Chudy.  The Court dismissed Plaintiff's claims against CTF Nurse Practitioner Jane Doe without prejudice.

On June 24, 2010, all remaining Defendants filed the present motion for summary judgment on all claims (docket no. 15).  On July 27, 2010, Plaintiff filed motions for extension of time to (1) complete discovery and (2) file an opposition.  Plaintiff then

filed an opposition to Defendants' motion for summary judgment on August 23, 2010, which in substantial part presented argument for an expert.  As discussed below, the Court construes this as a motion for a court-appointed expert.  Plaintiff simultaneously filed a motion to appoint counsel.  On August 31, 2010, the Court denied Plaintiff's request for counsel and granted an extension of time up to October 25, 2010 to complete discovery and file an opposition.  Plaintiff did not file any additional briefing following the Court's order granting the extension.  Defendants filed a reply on November 12, 2010.

For the reasons discussed below, Plaintiff's motion for an expert witness is DENIED, and Defendants' motion for summary judgment is GRANTED.

FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted.

Plaintiff has a history of low back pain, beginning in 1986. (First Amended Complaint (FAC) ¶¶ 33-59.)  Plaintiff was transferred from California State Prison-Lancaster to CTF on September 21, 1998. (FAC ¶ 58.)  Upon arriving at CTF, Plaintiff was screened by medical staff, and he informed them of his low back pain.  (FAC ¶ 59.)

On November 23, 1998, Defendant physician Grewal examined Plaintiff.  (FAC ¶ 61; Chudy Decl. ¶ 3.)  Grewal prescribed Motrin for pain and approved a chrono for Plaintiff to be housed on a lower bunk in the lower tier of the facility. (FAC ¶ 62; Chudy Decl. ¶ 3.)

Defendant physician Gines examined Plaintiff for low back pain on March 11, 1999.  (FAC ¶¶ 63-64; Chudy Decl. ¶ 4.)   Gines

United States District Court
For the Northern District of California

renewed the Motrin prescription and renewed the chrono for the lower bunk and tier, to continue indefinitely. (FAC ¶¶ 65-66; Chudy Decl. ¶ 4.)  Gines noted Plaintiff's lumbar disc disease. (Id.)  Gines examined Plaintiff again on August 19, 1999 and renewed the chrono.  (FAC ¶¶ 67-68; Chudy Decl. ¶ 5.)

Defendant physician Dayalan examined Plaintiff for low back pain on September 2, 1999.  (FAC ¶ 69; Chudy Decl. ¶ 6.)  Dayalan discussed an exercise regimen and provided Plaintiff with written materials for back exercises and stretches.  (Id.)

Grewal examined Plaintiff on January 26, 2001 and recommended that Plaintiff continue to exercise and stretch per Dayalan's prior recommendation.  (FAC ¶¶ 70-71; Chudy Decl. ¶ 7.)  Grewal also advised Plaintiff to decrease his cholesterol.  (FAC ¶ 71.)

On September 5, 2001, CTF physician Sinnaco examined Plaintiff and documented that Plaintiff's work duty should exclude heavy lifting.  (FAC ¶¶ 73-74.)

On May 6, 2002, Defendant physician Friederichs examined Plaintiff regarding complaints of radiating hip pain. (FAC ¶¶ 75-79; Chudy Decl. ¶ 8.)  Friederichs' notes indicated probable degenerative disc disease of the lumbar spine.  (Id.)  Friederichs renewed Plaintiff's Motrin prescription and recommended that he continue his stretches and exercises.  (Id.)  Friederichs also ordered X-rays of Plaintiff's right hip and lumbo-sacral spine and scheduled a follow-up appointment for May 20, 2002.  (Id.)

The X-rays were obtained on May 10, 2002.  (FAC, Ex. 14.)  The radiology report confirmed Friederich's diagnosis of degenerative disc disease.  (Id.)

//

3

United States District Court
For the Northern District of California

1    Friederichs saw Plaintiff on May 20, 2002 for the follow-up
2    appointment.  (FAC ¶¶ 81-83; Chudy Decl. ¶ 10.)  Friederichs noted
3    that Plaintiff's back was better but that Plaintiff had not been
4    exercising and that his cholesterol was up.  (FAC, Ex. 29.)
5    Friederichs recommended increased exercise and dietary counseling.
6    (Id.)

7    Plaintiff's FAC does not discuss any treatment between May 21,
8    2002 and August 13, 2007.  Plaintiff's medical records during that
9    time are relatively limited.  (Chudy Decl. ¶ 11.)  According to
10   Defendant Chief Medical Officer Chudy, there is no record of a
11   complaint of back pain or treatment for back pain during that
12   period.  (Id.)

13   Plaintiff's complaints regarding the alleged inadequacy of
14   medical care resumed in 2007.  (FAC ¶ 84.)  On August 13, 2007,
15   Dayalan examined Plaintiff regarding complaints of low back pain,
16   now accompanied by numbness and tingling in his left leg and foot.
17   (FAC ¶¶ 84-86; Chudy Decl. ¶ 12.)  Dayalan ordered X-rays.  (Id.)
18   Dayalan also provided Plaintiff written exercise instructions.
19   (Id.)

20   The X-rays were obtained two days later on August 15, 2007.
21   (FAC, Ex. 15.)  The radiology report indicated "Spondylosis"
22   consistent with degenerative changes and degenerative disc disease.
23   (Id.)  The report noted that both conditions were "slightly worse"
24   than indicated by the May 2002 X-rays.  (Id.)

25   On September 18, 2007 CTF physician Lee examined Plaintiff and
26   ordered an MRI.  (FAC ¶¶ 89-91 and Exs. 16-17.)

27   The MRI was obtained on November 5, 2007.  (FAC, Ex 18.)  The
28   report indicated moderate disc disease in conjunction with

4

congenital canal narrowing of the lumbar spine.  (Id.)  On December

19, 2007, after reviewing the report, Dayalan referred Plaintiff

for a neurological evaluation. (Chudy Decl. ¶ 15.)

Neurosurgeon Donald Ramburg examined Plaintiff at the Sierra

Vista Regional Medical Center on February 14, 2008.  (FAC, Ex. 31.)

Dr. Ramburg reviewed Plaintiff's August 15, 2007 X-rays, which he

believed indicated severe spinal stenosis at L3 through the sacrum.

(Id.)  Dr. Ramburg noted that Plaintiff had "foot drop" on the left

side when walking and some difficulty elevating the right foot.

(Id.)  After discussing options with Dr. Ramburg, Plaintiff decided

to proceed with surgery.  (FAC, Ex. 20.)

On April 28, 2008, Dr. Ramburg operated on Plaintiff.  (FAC,

Ex. 20.)  The surgery included: (1) bilateral lumbar laminectomy

and decompression at L3-L5; (2) bilateral lumbar fusion at L3

through sacrum; and (3) posterior segmental instrumentation at L3

through sacrum.  (Id.)

Plaintiff returned to CTF following surgery on May 6, 2008.

(FAC ¶ 104.)  Defendant CTF Pharmacist-In-Charge Hilleary received

an order for Plaintiff's pain medication.  (FAC ¶ 110.)  Hilleary

filled the prescription.  (Id.)  According to the FAC, however,

Plaintiff did not receive the prescription until May 16, 2008 when

he walked to the CTF-MD to request the medication personally.  (FAC

¶¶ 111-129.)

Also on May 16, 2008, Dayalan examined Plaintiff.  (FAC

¶¶ 127-128; Chudy Decl. ¶ 16.)  Dayalan prescribed Plaintiff 800mg

of Motrin, ordered that Plaintiff be given a double mattress, and

provided Plaintiff with exercise instructions.  (Id.)

//

Dr. Ramburg examined Plaintiff on June 19, 2008. (FAC, Ex. 34.) Dr. Ramburg recommended that Plaintiff increase his activity, including the exercises he was given, and that he begin walking more frequently. (Id.) Dr. Ramburg also recommended physical therapy. (Id.)

On July 16, 2008, Plaintiff submitted an Accommodation Request Form (CDC 1824) requesting physical therapy. (FAC, Ex. 35.) Plaintiff was informed that CTF was in the process of hiring a physical therapist and that he had been placed on the waiting list once a treater was available. (Hernandez Decl., Ex. A.)

Beginning on July 11, 2008, Plaintiff also submitted requests for a new back brace, claiming that his had broken. (FAC, ¶¶ 138-141, 145-146, 150, 152.) On August 5, 2008, Dr. Ramburg examined Plaintiff and ordered a new brace. (FAC ¶¶ 153-154; Hernandez Decl., Ex. B.) Plaintiff received the new brace on August 15, 2008. (FAC ¶ 159.)

On November 21, 2008, Plaintiff was examined by physical therapist Jim Keller. (FAC ¶ 166.) Keller prepared an Initial Evaluation form, documenting Plaintiff's range of motion, strength, and ability to perform daily activities. (Hernandez Decl., Ex. C.) The therapist spoke with Plaintiff regarding his evaluation and plan for improvement. (Id.) Plaintiff's exercise program was continued. (Id.)

Plaintiff has been allowed the use of a cane, and his chrono to be housed on a lower bunk in the lower tier has been renewed frequently. (Hernandez Decl., Ex. D.)

//

//

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

MOTION FOR EXPERT WITNESS

Paragraphs 3 through 6 of Plaintiff's opposition (docket no. 29), appear to present an argument for a court-appointed expert, which the Court will construe as a motion to appoint an expert witness.

Federal Rule of Evidence 706 allows the Court to appoint an expert; however, the Court finds that appointment of an expert is not necessary or appropriate in the instant case. First, the Court does not need an expert witness to aid its understanding of the deliberate indifference to medical needs claim in this action. Second, in a civil rights action such as this, Rule 706(b) contemplates that the expert would be paid by the parties, but here Defendants would have to bear the entire cost because Plaintiff would be unable to pay for the expert. There is no showing that it is appropriate or fair to require Defendants to bear the sole burden of paying an expert witness to present Plaintiff's point of view.

Accordingly, Plaintiff's motion for an expert witness is DENIED.

MOTION FOR SUMMARY JUDGMENT

I.   Legal Standard

Summary judgment is properly granted when no genuine and disputed issues of material fact remain and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

7

United States District Court
For the Northern District of California

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.  The burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir.), cert. denied, 502 U.S. 994 (1991).  A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  Celotex, 477 U.S. at 323.

//

//

//

1  II.  Legal Claims

2       A.   Eighth Amendment Deliberate Indifference Claim

3            1.   Analysis of Deliberate Indifference Claim

4       Deliberate indifference to serious medical needs violates the

5  Eighth Amendment's prohibition against cruel and unusual

6  punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976);

7  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled

8  on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d

9  1133, 1136 (9th Cir. 1997) (en banc); Jones v. Johnson, 781 F.2d

10  769, 771 (9th Cir. 1986).  The analysis of a claim of "deliberate

11  indifference" to serious medical needs involves an examination of

12  two elements: (1) a prisoner's serious medical needs and (2) a

13  deliberately indifferent response by the defendants to those needs.

14  McGuckin, 974 F.2d at 1059.  A serious medical need exists if the

15  failure to treat a prisoner's condition could result in further

16  significant injury or the "unnecessary and wanton infliction of

17  pain."  Id.  (citing Estelle, 429 U.S. at 104).  "The existence of

18  an injury that a reasonable doctor or patient would find important

19  and worthy of comment or treatment; the presence of a medical

20  condition that significantly affects an individual's daily

21  activities; or the existence of chronic and substantial pain are

22  examples of indications that a prisoner has a 'serious' need for

23  medical treatment."  Id. at 1059-60 (citing Wood v. Housewright,

24  900 F.2d 1332, 1337-41 (9th Cir. 1990)).  A prison official is

25  deliberately indifferent if he knows that a prisoner faces a

26  substantial risk of serious harm and disregards that risk by

27  failing to take reasonable steps to abate it.  Farmer v. Brennan,

28  511 U.S. 825, 837 (1994).  The prison official must not only "be

United States District Court
For the Northern District of California

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." Id. If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002). In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. See McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). A finding that the defendant's activities resulted in "substantial" harm to the prisoner is not necessary, however. Neither a finding that a defendant's actions are egregious nor that they resulted in significant injury to a prisoner is required to establish a violation of the prisoner's federal constitutional rights. McGuckin, 974 F.2d at 1060, 1061 (citing Hudson v. McMillian, 503 U.S. 1, 7-10 (1992) (rejecting "significant injury" requirement and noting that Constitution is violated "whether or not significant injury is evident")). However, the existence of serious harm tends to support an inmate's deliberate indifference claims, Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing McGuckin, 974 F.2d at 1060).

Plaintiff claims that Defendants failed to provide him with adequate medical treatment, causing his serious medical condition to go unattended for several years. (FAC ¶¶ 9-15.)

Defendants concede, for purpose of this motion only, that a question of fact exists as to whether Plaintiff faced a serious medical need. (MSJ at 7.) However, Plaintiff's allegations do not

support a claim of deliberate indifference.  The record amply shows that Defendants provided adequate care to Plaintiff.

          a.    Defendants Gines, Dayalan, Friederichs and Grewal

    Defendants CTF physicians Gines, Dayalan, Friederichs, and Grewal, as well as other CTF physicians and outside physicians, examined Plaintiff on multiple occasions and gave him adequate treatment for his medical needs.  When Plaintiff first entered CTF, Defendant Grewal noted his low back pain and prescribed him pain medication.  Plaintiff's subsequent complaints were not ignored by Defendant physicians, who continued to provide follow-up care according to Plaintiff's medical needs.  As detailed above, during his first three-and-a-half years at CTF, Plaintiff had at least eight examinations for low back pain as well as an X-ray.  Later, during the period from August 2007 to November 2008, Plaintiff had at least four back examinations, a neurological evaluation, an X-ray, an MRI, back surgery, multiple post-surgical follow-ups and physical therapy.  Moreover, the evidence demonstrates that during the period of treatment Defendants were constantly searching for a root cause of Plaintiff's symptoms.  In addition to their own examinations, CTF physicians immediately ordered and followed up on the results of outside scans and specialist consults.

    The record also shows that pain medication was regularly provided, Defendants regularly renewed Plaintiff's chrono for a lower bunk on a lower tier, Defendants ordered Plaintiff a double mattress and a new back brace, Defendants restricted Plaintiff to light work duty and Defendants provided Plaintiff with verbal and written exercise instructions.  In addition to treatment for his

11

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

back problems, the record shows that CTF physicians and nurses gave Plaintiff multiple primary care visits as well as treatment for hypertension, high cholesterol and a hyrnea.[1]

While the record is sparse as to Plaintiff's treatment from May 2002 to August 2007, as noted above, Plaintiff does not make any allegations regarding his treatment during this time. Specifically, Plaintiff does not claim that he needed or requested medical care or that Defendants deliberately ignored his needs during this period.  To the contrary, following a review of Plaintiff's 2002 X-rays, Friederichs' notes in May 2002 showed that Plaintiff's back had improved.  (FAC, Exs. 14, 29.)  When Plaintiff next requested care in August 2007, he was examined and given another set of X-rays, which showed that his condition had only worsened "slightly."  (FAC, Ex. 15.)  Nonetheless, CTF physicians examined Plaintiff again a month later and ordered an MRI, which was obtained in November 2007 followed by a neurological evaluation in February 2008.

Furthermore, while Plaintiff states that he was "frustrated with the continual delay"[2] in receiving after-care following surgery -- specifically delay in receiving physical therapy and a new back brace -- the Court does not find the duration of the wait unreasonable.  There is no evidence that the wait seriously worsened Plaintiff's medical condition nor that Defendants caused the wait out of deliberate indifference to his condition.  To the contrary, Dr. Ramburg recommended physical therapy during his

---

[1]See FAC, Exs. 10, 12, 13, 29, 31.

[2]FAC ¶ 142.

12

United States District Court
For the Northern District of California

post-surgical examination on June 19, 2008.  (FAC, Ex. 34.)  On July 10, 2008 and July 29, 2008, Plaintiff was informed that CTF no longer had a physical therapist but that CTF's physical therapy program would start again soon.  (FAC ¶¶ 133-134, 149.)  On July 30, 2008, CTF Registered Nurse Fernandez interviewed Plaintiff regarding his request for physical therapy.  (FAC ¶151.)  Nurse Fernandez informed Plaintiff that he would be sent to Dr. Ramburg again to ascertain if Dr. Ramburg still recommended physical therapy aftercare.  (Id.)  Plaintiff saw Dr. Ramburg for follow-up on August 28, 2008 and October 2, 2008.  (Hernandez Decl. Exs. A-B.)  Dr. Ramburg noted that Plaintiff was pleased with his progress and recommended physical therapy "when available."  (Id.)  Dr. Ramburg also provided Plaintiff with exercise and stretch instructions.  (Id.)  Plaintiff was again informed on October 11, 2008 that CTF was in the process of hiring a physical therapist and that he was on the waitlist.  (Id.)  Plaintiff was examined by a physical therapist on November 21, 2008.  (Hernandez Decl. Ex. C.)  The physical therapist provided Plaintiff with exercise instructions.  (FAC ¶ 166.)

Similarly, Plaintiff reports that his back brace broke on July 11, 2008.  (FAC ¶138.)  On July 11, 16, 18, 23, and 28 2008, Plaintiff submitted requests for a new brace.  (FAC ¶¶ 139-141, 145-146.)  On July 29 and 30, 2008, CTF nurses interviewed Plaintiff regarding the back brace.  (FAC ¶¶ 150, 152.)  Plaintiff reported that he was uncertain what position he should sleep in, and the nurses advised him to wait for his physical therapy appointment.  (Id.)  On August 5, 2008, Dr. Ramburg examined Plaintiff and ordered a new back brace.  (FAC ¶¶ 153-254.)

13

Plaintiff received the new brace on August 15, 2008.  (FAC ¶158.)

In sum, the record show that Defendants and others monitored Plaintiff's status, responded to his complaints and ultimately successfully provided him with both physical therapy and a new back brace.  The Court does not find that the wait was unreasonable or that it caused Plaintiff injury.  Moreover, the delay was not the result of deliberate indifference but rather of the time required to process Plaintiff's requests and obtain appointments with the necessary specialists.

Therefore, considering the evidence in the light most favorable to Plaintiff, the Court finds it insufficient to raise a dispute of material fact that Defendant physicians were deliberately indifferent to Plaintiff's serious medical needs.  Cf. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989) (summary judgment reversed where medical staff and doctor knew of head injury, disregarded evidence of complications to which they had been specifically alerted and, without examination, prescribed contraindicated sedatives).  Accordingly, Defendants Gines, Dayalan, Friederichs and Grewal are entitled to summary judgment on the deliberate indifference claim as a matter of law.  See Celotex, 477 U.S. at 323.

b.   Defendant Hilleary

It appears that Plaintiff only brings state law claims against Defendant CTF Pharmacist-In-Charge Hilleary.  (FAC ¶ 28.) Plaintiff's state law claims are discussed below.  Assuming, however, that Plaintiff also brings an Eighth Amendment deliberate indifference claim against Hilleary, the claim fails.  Plaintiff admits that after he returned to CTF following his April 2008 back

surgery, Hilleary filled Plaintiff's prescription for pain medication. (FAC ¶ 110.) The only allegation that Plaintiff makes regarding this Defendant is that "Hilleary did not insure that the plaintiff received the prescribed pain medication." (FAC ¶ 111.) Hilleary states in his declaration, however, that neither he nor the pharmacy staff is responsible for "ensuring that inmates actually receive or ingest the medications prescribed to them." (Hilleary Decl. ¶ 4.) Plaintiff does not dispute this. Even assuming that Hilleary had a duty to ensure that Plaintiff received the prescription, Plaintiff does not establish that Hilleary's failure to do so was "purposeful" as required to show deliberate indifference. See McGuckin, 974 F.2d at 1060. Nor does Plaintiff offer any evidence that Hilleary was deliberately indifferent to Plaintiff's serious medical needs in any other manner. Accordingly, Defendant Hilleary is entitled to summary judgment as a matter of law on Plaintiff's Eighth Amendment deliberate indifference claim as well. See Celotex, 477 U.S. at 323.

c.    Defendant Chudy

Plaintiff sues Defendant Joseph Chudy in his capacity as CTF's Chief Medical Officer. Defendants claim that Chudy is entitled to summary judgment because Plaintiff has failed to establish a causal connection between him and the alleged violation of Plaintiff's rights. The Court agrees.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under the color of state law committed a violation of a right secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42, 48 (1988). Liability may be imposed on an individual defendant under section 1983 if the

15

United States District Court
For the Northern District of California

plaintiff can show that the defendant proximately caused the deprivation of a federally protected right.  <u>See Leer v. Murphy</u>, 844 F.2d 628, 634 (9th Cir. 1988); <u>Harris v. City of Roseburg</u>, 664 F.2d 1121, 1125 (9th Cir. 1981).  A person deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains.  <u>Leer</u>, 844 F.2d at 633.  Sweeping conclusory allegations will not suffice; the plaintiff must instead "set forth specific facts as to each individual defendant's" deprivation of protected rights.  <u>Leer</u>, 844 F.2d at 634.

The Court agrees that the complaint does not allege any wrongdoing by Chudy.  The only mention of Chudy involves the fact that Chudy responded to Plaintiff's second level administrative appeal for medical treatment in February 2008 and to Plaintiff's Multi-Purpose Form request for after-care treatment in July 2008. (FAC  ¶¶ 101, 142-143.)  This is insufficient to state a claim. There is no constitutional right to a prison administrative appeal or grievance system.  <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988).  An incorrect decision on an administrative appeal or a failure to handle it in a particular way therefore does not amount to a violation of a plaintiff's constitutional rights.  Moreover, there is no evidence that Chudy's responses showed a deliberate indifference to Plaintiff's medical needs.  To the contrary, as discussed above, each of Plaintiff's requests was responded to by Chudy or other CTF officials.  The Court does not find that Chudy caused Plaintiff's condition to go unattended.

16

**United States District Court**
For the Northern District of California

Assuming Plaintiff sues Chudy in his supervisorial capacity, the claim also fails.  As discussed above, the Court has not found that any of Chudy's subordinates were deliberately indifferent to Plaintiff's medical needs.  Accordingly, Defendant Chudy is entitled to summary judgment as a matter of law as to Plaintiff's Eighth Amendment deliberate indifference claim as well.  <u>See</u> <u>Celotex</u>, 477 U.S. at 323.

          2.   Qualified Immunity

Defendants claim, in the alternative, that even if Plaintiff's allegations revealed a constitutional violation, qualified immunity would protect them from liability on Plaintiff's deliberate indifference claim.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  The rule of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).  Defendants may have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation.  <u>Id.</u> at 205.  The threshold question in qualified immunity analysis is:  "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" <u>Id.</u> at 201.  A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual

constitutional right and whether such right was "clearly

established." Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808,

818 (2009).  Where there is no clearly established law that certain

conduct constitutes a constitutional violation, the defendant

cannot be on notice that such conduct is unlawful.  See Rodis v.

City and County of S.F., 558 F.3d 964, 970-71 (9th Cir. 2009).  The

relevant, dispositive inquiry in determining whether a right is

clearly established is whether it would be clear to a reasonable

defendant that his conduct was unlawful in the situation he

confronted.  Saucier, 533 U.S. at 202.

On these facts, viewed in the light most favorable to

Plaintiff, Defendants prevail as a matter of law on their qualified

immunity defense because the record establishes no Eighth Amendment

violation.  However, even if a constitutional violation had

occurred with respect to Plaintiff's claim of deliberate

indifference to his serious medical needs, in light of clearly

established principles at the time of the incident, Defendants

could have reasonably believed their conduct was lawful.  See

Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049-50 (9th Cir.

2002).

Defendants do not dispute that Plaintiff's right to be free

from deliberate indifference to his serious medical needs was

clearly established during the period within which the injuries

complained of occurred.  Given the circumstances, however,

Defendants' actions were reasonably calculated to alleviate

Plaintiff's pain and ultimately identify and treat the core cause

of Plaintiff's condition.  Based on the evidence available to

Defendants, their actions were reasonable and appropriately

United States District Court
For the Northern District of California

18

tailored to Plaintiff's condition and symptoms.  Defendants'
actions eventually resulted in a definitive diagnosis of
degenerative disc disease and a successful treatment plan.
Therefore, a reasonable person in Defendants' situation could have
believed that his actions did not violate Plaintiff's clearly
established constitutional rights.

Accordingly, Defendants are entitled to qualified immunity
with respect to Plaintiff's Eighth Amendment deliberate
indifference claim, and their motion for summary judgment on this
claim is GRANTED on those grounds as well.

B.   State Law Claim for Violations of Cal. Penal Code § 673
     and CDCR Operational Procedures

Plaintiff alleges that Defendants violated Cal. Penal Code
§ 673[3] as well as the CDCR health care services division
operational procedures.  (FAC ¶¶ 16-30.)  Cal. Penal Code § 673 is
a criminal statute.  Statutes establishing criminal liability for
certain deprivations of civil rights do not give rise to civil
liability. Allen v. Gold Country Casino, 464 F.3d 1044, 1048 (9th
Cir. 2006).  Similarly, the CDCR operational procedures are
designed to guide prison staff; they do not provide prisoners with
rights to sue. See Sandin v. Conner, 515 U.S. 472, 481-82 (1995)
(prison regulations "guide correctional officials in the
administration of a prison" and do not "confer rights on inmates").

---

[3] Cal. Penal Code § 673 provides in relevant part:

It shall be unlawful to use in the reformatories,
institutions, jails . . . or any other state,
county, or city institution any cruel, corporal
or unusual punishment or to inflict any treatment
or allow any lack of care whatever which would
injure or impair the health of the prisoner,
inmate or person confined.

Because the statute and operational procedures do not provide a right to bring a private cause of action, Defendants are entitled to summary judgment on this claim.

C.   State Law Medical Malpractice Claim

Plaintiff's complaint includes a state law claim for medical malpractice against all Defendants.   (FAC ¶¶ 18-30.)   The elements of a claim for professional negligence, also referred to as medical malpractice, under California law, are "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Budd v. Nixon, 6 Cal. 3d 195, 200 (1971), superseded in part by Cal. Civ. Proc. Code § 340.6.   Although prison employees often enjoy immunity from state tort liability, California law expressly provides: "Nothing in this section exonerates a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state from liability for injury proximately caused by malpractice."   Cal. Gov't. Code § 845.6.

Defendants argue that the medical care they provided to Plaintiff fell within the professional standard of care and that they did not cause Plaintiff to suffer harm.   (Chudy Decl. ¶¶ 3-18.)   The evidence in the record, described in detail above, supports the conclusion that Defendants were not negligent in treating Plaintiff's back pain.   Alternatively, even if Defendants had been negligent, Plaintiff suffered no cognizable loss or damage

United States District Court
For the Northern District of California

related to his back problems.  Accordingly, the Court grants
Defendants' motion for summary judgment on Plaintiff's medical
malpractice claim.

CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Plaintiff's motion for an expert witness (docket no. 29) is
DENIED.

2. Defendants' motion for summary judgment (docket no. 15) is
GRANTED on all claims.

3.  The Clerk of the Court shall enter judgment and close the
file.  All parties shall bear their own costs.

IT IS SO ORDERED.

DATED: 2/23/2011

CLAUDIA WILKEN
UNITED STATES DISTRICT JUDGE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


HENRY WILDS et al,

          Case Number: CV08-03348 CW

       Plaintiff,

**CERTIFICATE OF SERVICE**

  v.

DONALD GINES et al,

       Defendant.

_____/

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 23, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Henry  Wilds E-55595

208-8-Low

CRC State Prison

P.O. Box 3535

Norca,  CA 92860

Dated: February 23, 2011

                Richard W. Wieking, Clerk

                By: Nikki Riley, Deputy Clerk